This is K-Swiss Inc. v. Glide'n Lock, also known as Encloud. 2013-13-16, is it Mr. Weyruch? Weyruch, yes. Weyruch. Weyruch. Thank you, Your Honor. May it please the Court. Here we had an inter-parties re-examination initiated by K-Swiss attacking the 866 patent. And the examiner, at the conclusion of his work, rejected all of the claims on multiple grounds. When it then went to the PTO Board, the Board affirmed most of the anticipation rejections, but reversed all of the obviousness rejections. And we think that is the primary place where the Board went wrong. We think they used too strict of a standard in combining the references. Basically, they looked at the background of the Sentes reference, which is the primary reference for the obviousness rejections, and said that because there is a recognition in the background of Sentes that a particular type of prior art suffers from a shortcoming or a problem, that you wouldn't use that. But Sentes is actually directed specifically towards solving that problem, which is that when you have more cushioning and more yielding in the soles of athletic footwear, you're going to have this instability problem. And Sentes solves that by, when you have collapse, that you will have engagement of upper and lower inner surfaces in order to solve that stability problem. Now, the Board said that because the background of Sentes identifies prior art as having this problem, that you would therefore discard all of the prior art in the background and that you would not make a combination of Sentes' solution with cushioning elements configured as in the background prior art. Now, in our view, the recognition that the background prior art has this problem shows that it's ready for improvement and that it would benefit from the solutions taught by Sentes. And when you look at the claims rejected for obviousness, they really do no more than combine known elements for their known purposes to provide predictable results. And so, we think that's the primary problem with the Board's reversal of all of the obviousness rejections. Now, the other problem is that with the obviousness rejections is that, particularly with regard to the independent claims, it discards the obviousness rejections because it says that one would not use Sentes' solution for having engagement of inner surfaces to promote stability in arrangements that have plural cushioning elements because Sentes has a single large cushioning element. Well, the independent claims don't even call for plural cushioning elements. That's in some of the dependent claims. And the dependent claims were not even separately argued as patentable. So, that's an additional reason why we think the obviousness analysis is flawed. And I think once you find that the references are properly combinable, then that renders obvious all of the claims. As I said, most of the anticipation rejections were affirmed by the Board. There were two anticipation rejections based on the, two claims that the anticipation rejection based on Okabe were reversed. And we feel in those instances the Board did not apply the broadest reasonable interpretation of the claims. And those were claims 8 and 11, dependent claims 8 and 11. For claim 8, it's referring to positive engagement between the upper and lower surfaces to give you that improved stability. What the Board basically did is they said that they looked at the drawing figure in the 866 patent and they saw two teeth on both the upper and lower surfaces and they said, well, you don't have positive engagement in Okabe because you only have pins on one surface. And in our view, Okabe clearly teaches that the pins will deform up into the resilient surface and that gives you a geometrical engagement other than just frictional engagement. And so that does give you the positive engagement and we think for claim 8 that the Board interpreted the claim too narrowly to basically require that you have teeth on both upper and lower surfaces. And then with regard to claim 11, we think the Board was overly narrow in saying that Okabe does not have a tube because Okabe in the cavity of the cushioning element, it has a flat surface. And they basically, in interpreting the word tube, required it to be cylindrical or round all the way around. Okabe has sort of an elliptical type shape and they said because it doesn't have a flat surface, then it's not tubular. We think that also did not give the broadest reasonable interpretation. Now separate and apart from the anticipation rejections, though I think it's important to keep in mind regarding the tubular issue that that is also covered by the obviousness rejection because the obviousness references show plural different references that show that the use of tubular type shape, round tubular cushioning elements is quite common in the prior art. So you asked us if we agree with you towards the end of your brief, you asked us to remand. In light of the last argument, do we have to remand? I think it was On Clouds that asked for a remand. We think you have what you need to find all of the claimants in battle. Here there's an appeal by us and a cross appeal by On Clouds. You're right. The question was what On Clouds argues for. We don't think that's necessary. I think the primary reason they say a remand is appropriate would be to consider their declarations. We argue that there's insufficient nexus before the board with regard to their improved results, commercial success, secondary considerations. Basically, if you look at their declarations, it's not clear what was actually being tested or was being extolled. So we can consider the declarations in the first instance? Well, beyond that, after we pointed out before the board that there was no nexus, they then limited it and said, well, we have nexus only with regard to Claim 8. Now, Claim 8 is covered by the anticipation rejection based upon Sentase. And so for that reason, if the anticipation based on Sentase is affirmed, then the declarations are totally irrelevant. If that's not affirmed, we believe the case of obviousness is still so strong in that there are clear teachings of positive engagement. Claim 8 refers to positive engagement between upper and lower surfaces. And in Sentase, it clearly shows toothed and notched surfaces, both on upper and lower surfaces. And so the board affirmed the anticipation rejection with regard to Claim 8. And so, given that they focused their nexus with regard to their declarations only to Claim 8, once that's affirmed, the declarations are irrelevant. We will save the remainder of your time, if you like, for rebuttal. Thank you. Mr. Petrie? And you may wish to save time for the cross-appeal if there will be something to rebut. Exactly right, Your Honor. Three minutes, please. May it please the Court, I'm going to first address the issues raised by Casewitz's appeal and then turn to the cross-appeal issues. Here, substantial evidence supports the board's holding that the invention of the 866 patent would not have been obvious in view of the combination of Sentase on the one hand and Bagani, Takahashi, and Inohara on the other hand. I think it's important here to keep in mind that Casewitz, as a requester, has the burden to show unpatentability. It's not Encloud's burden to prove that its own patent claims are valid. Here, the board made specific findings on the obviousness issue, and those findings are supported by substantial evidence. I think Casewitz's arguments on appeal boil down to that the board should have come out to a different result. But under the proper standard of review, it doesn't matter whether there may be more than one way to view the evidence. If substantial evidence supports the board's decision, then that decision has to be affirmed. In this case, the board… Three claims here survive, right? 6, 7, and 11? That's correct, Your Honor. But was there any indication in the specification that there was anything new about these ranges or anything patentability distinct about these ranges or the use of a large cylinder? I think, Your Honor, that goes to the problem that Casewitz… No, you're not answering my question. Is there anything in the specification that suggests that there's something novel about these particular ranges or the use of a large cylinder? Well, the specification just describes… I don't know, I can't say offhand if there's anything specific in there about this. This is particularly novel, but the specification does describe it as part of the invention. And it's Casewitz's burden to prove that… So the answer is there's nothing in the specification suggesting that the ranges are novel or add anything of significance? Well, I think you have to look at it in the context… No, you have to answer my question. You can't avoid the question. I apologize, Your Honor. The answer is yes. In the context of this invention, if you look at the entire invention, there was… What is it in the specification that says there's something special about these ranges? There's not anything specific in the specification about these ranges except in the context of the overall invention. Is there anything specific in the specification about the use of this large cylinder as being beneficial? Again, that was the… No, what's the answer? The answer is yes. The hollow two-year element, that was described as giving the specific features that the invention was set out to address. No, but is there any suggestion that the hollow cylinder is something uniquely beneficial as compared to the other embodiments? As compared to the other embodiments, no. But all those embodiments result in what the invention was set out to accomplish, in terms of distinguishing the two types of athletic shoes that already existed that both had problems, and that gets more to the cross-appeal issues. So, if the PTO was correct in rejecting the other embodiments as being either anticipated or obvious, what's special about the cylinder that should save that claim? Your Honor, I think the problem here is that you have to look at what case was asked for in this case. In the original re-examination request… It would be helpful to me if you could address my question. It's difficult to address that question outside the context of this re-examination proceeding because… I'm not asking you to address it outside the examination proceeding, re-examination proceeding. I'm asking you to address why it is that this claim should survive when the other is full. Because case was never appealed the examiner's decision not to adopt the rejections of claims 6 and 7 based on dentists alone. And that's the reason why they survived. Case was chosen not to appeal. If case was wanted to say that, oh yes, it's claims 6 and 7, whatever the range is there, that would have been obvious modification based on all the other prior arguments. They did argue that, right? It's arguing it now, but… They're arguing it before the board, too, right? They, okay, I think it's important to keep in mind there's two different rejections here. There's the proposed rejection over dentists alone, the anticipation rejection, and the board said dentists did not describe the ranges in claims 6 and 7. Therefore, the examiner did not adopt the rejections. They didn't appeal that, so they waived any issue as to whether or not these claimed range limitations in 6 and 7 are obvious or anticipated or just standard common knowledge based on dentists. The other is… Wait a second. I don't understand this. They certainly challenged claims 6 and 7 before the board. Are you saying they did it on one ground but not on another? Claims 6 and 7 were, at the end of the day, they were only rejected on the obviousness grounds. So they argued in favor of that rejection, right? They did, based on obviousness. It's a combination of dentists and Pagani Inohara Takahashi. And when the board found that there was no reason to combine dentists with those other references, they didn't have any proposed rejections left for claims 6 and 7, so that's why they come out of the re-examination. And I still think it goes back to, if they really wanted to preserve their right to challenge claims 6 and 7, just that, oh, it's just common knowledge or easily… one school may not easily use those ranges, then they should have appealed the examiner's decision not to adopt the rejections, claims 6 and 7, just based on dentists alone. So going back to the main obviousness issue, the combination of dentists with Pagani Takahashi Inohara, the board here made a specific finding that a fair reading of dentists suggests not using a plurality of small channels such as that disclosed in Pagani because dentists disparage such a configuration. That finding, supported by substantial evidence, namely in Zentes itself, pages 3 to 4, discusses the Sakatori reference, which has small channels in the shoe sole, like shown in Pagani Takahashi. It disparages the reference unless the cylinder collapses and provides friction, right? It doesn't disparage it in a situation where there is friction created by the two sides of the cylinder. While you're answering that, how does the size and number of the small holes, how is that relevant to the claims as opposed to the friction created? It's relevant because it's relevant to the issue as to whether or not one skill in the art would think to use Zentes in combination with Pagani Takahashi Inohara. Zentes is criticizing these small holes, these small channels, and so therefore, as the board found, there's no reason, one skill in the art would not have a reason to combine Zentes with those small channels because Zentes has already criticized those and Zentes has given an alternative construction, namely a single larger channel with these ribs and notches. I think this kind of highlights one of the points, as my colleague said, the number of channels is not decided in claim one, but that right there is hindsight. Zentes is criticizing these small channels, so one skill in the art wouldn't think to combine Zentes with Sakatori, Pagani, Takahashi, Inohara, and it's only because they're now looking at the claim. How does Zentes disparage Pagani? Well, Zentes disparages the Sakatori reference, and what Sakatori shows is these small channels in the sole and those small channels are also shown by Pagani, Takahashi, and Inohara, so I think in the board's view, and according to the board's findings, that disparagement of Sakatori applied equally well to Pagani, Takahashi, and Inohara, and it's specifically disparaging those small channels by saying there's this wobbling, Zentes teaches that this results from a lack of ribs or notches to engage, right? Well, what Zentes says is instead of using those small channels that will result in an unassured wobbling lock, use my construction instead, where I have this chamber and it has these ribs and notches. It doesn't say it's from a plurality of small channels. It's criticizing these small channels in the sole and as an alternative to what Zentes... Well, it's challenging the small channels if there's no friction created that solves the floating effect, right? I mean, I don't think it's fair to say that it disparages small channels generally. Well, there's no suggestion in Zentes that, yes, why don't you modify those small channels... No, it doesn't explicitly say that, but it does say prevent the floating effect by creating friction, by creating engagement. I disagree, Your Honor. I think Zentes says don't use those small channels, use my structure instead. I have a shoe sole that has ribs and notches, and once those engage... Well, I don't, where do you find that? I don't see that language in Zentes. I see they're talking about the engagement to prevent the floating effect. But this is what the board's finding is, and to the extent Case Wiss is making these arguments... The board found that Zentes only talked about solving the floating effect through using the notches? It disparages, the board said that Zentes, well, it says Zentes suggests not using a plurality of small channels, such as disclosed in Pagani, because Zentes disparages such a configuration. So, yes, that's defining the board. Well, doesn't it disparage that configuration only if there's no friction created? There's no suggestion that there would be friction created. No, but is my statement correct, that it only disparages them if there's no friction? And I think, Your Honor, that's... No, is that correct? I mean, you're supposed to get up here and answer the question. Okay, I'm sorry, Your Honor. Yes, that is correct. It doesn't mention anything about friction in connection with those small channels. But to the extent that you're now going to say, yes, those small channels would have friction, that's just applying hindsight based on what was described in the 866 patent. Because Zentes didn't say, eliminate, you know, overcome the wobbling feeling by using frictional engagement. Zentes says, here, I've got these ribs and these notches. Well, I'm not sure that that's correct. I thought that it does suggest solving the floating problem by frictional engagement. 738. Well, in Zentes, yes, there is frictional engagement between the ribs and the notches. But that's in the context of the Zentes configuration. Zentes didn't say anything about go back and modify what was in Pagani and Takahashi and Inohara in order to have some frictional engagement in those configurations. And I think it's important to realize, to focus on that, the board made specific findings in this case that Zentes disparaged configurations such as Pagani. And there's substantial evidence to support that, the statement in Zentes itself. So even though cases can now come forward and say, oh, well, there's an alternative way to view the evidence, that's not enough. As long as there's substantial evidence to support the board's decision, then the board has to be affirmed. Just real briefly on the cross-appeal issues, and I think this might help answer some of these questions about the frictional engagement. In the 866 patent, the inventor recognized that there are configurations in some existing athletic shoes that would allow some sort of horizontal absorption of loads, like when the runner's foot lands. And that might be shown, you know, and then there's the other type of athletic shoes did not permit this horizontal lateral absorption of loads. They only permitted absorption of loads in the vertical direction. And so, in my view, I think, and according to what the board's reasoning was on the obviousness issue, Zentes tried to distinguish over those prior existing shoes with the channels in the soles by providing a shoe that only provided cushioning in the vertical direction and didn't allow any movement in the relative longitudinal direction between the upper and lower components. Thank you, Mr. Petty. If there's anything to rebut on the cross-appeal, then we'll give you that. Okay, thank you. Thank you. First, a point of clarification with regard to Claims 6 and 7. While in the first instance, a burden to come forward for an obviousness argument may rest with the petitioner, when the case was going to the board, all of the claims stood rejected, and it was OnClouds that was appealing. And OnClouds submitted no arguments that Claims 6 and 7 were separately patentable and never argued that there was any criticality or non-obviousness with respect to the range that's set forth in those claims. And so, Claims 6 and 7 were not at issue in the appeal because OnClouds submitted no arguments with regard to separate patentability of Claims 6 and 7. With regard to Sentase, a couple of points. In the discussion that Sentase disparages plural tubular type of cushioning elements, that is part of the board's obviousness analysis. It's not in their factual finding. In their factual finding, I think they just quote and cite the discussion of that reference in Sentase. What page of Sentase is that discussion at? I was just going to mention that because I think that's a very important thing to look at. It's at JA01731, and I think the important thing to look at is not only that page, but also 1732 and 1733. Because this is in a situation where Sentase singles out plural tubular cushioning elements, and so that's the bad guy. It's in a discussion of some six or so or more prior art references. The first one is not the plural arrangement. The first one is at 1731, starting at about line 21, and it says an example of this solution for providing cushioning, and it refers to USP4342157, specifying a hollow cavity. Then it goes on, and at the end it says the drawback of said solution lies in that walking becomes unstable. The next one is the one that the board is saying allegedly is disparaging, and it refers to here's another arrangement that contains plural elongated cells, and that paragraph bridges to the next page. And it says this arrangement shows, quote, the same deficiencies as the previous one, wearing results in unsure and wobbling walk. And so it's not singling out a plural tubular arrangement as uniquely having an unsolvable problem. It's saying that this is among many prior art references that have this instability problem, and after discussing other references, then on 1733 it has a general summary, and one of the drawbacks of all of these references, it says, is this uncertainty problem. And then Sente proceeds to discuss that the way it solves this instability problem is that by having the upper and lower engaging surfaces, so that when they contact each other, you won't have the sliding movement, and the stability is promoted. And so Sente doesn't just single out and say our solution is inapplicable, or you would never want to use plural tubular cushioning elements. The plural tubular cushioning elements are among many references that have the problem that Sente is directed towards solving. And in our view, that shows that those arrangements are ready for improvement, and they would benefit from the teachings of Sente. Thank you. Thank you. Counsel, I don't think there's any rebuttal, so we'll take the case under advisement.